**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0446n.06

**No. 08-1631**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Jun 30, 2009
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| **MATTHEW L. STREATER, et al.,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **APPEAL FROM THE DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| **v.** | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **MICHAEL A. COX, et al.,** | ) | **AMENDED** |
| | ) | |
| **Defendants-Appellees.** | ) | |

BEFORE:  KETHLEDGE and WHITE, Circuit Judges; and POLSTER, District Judge.[*]

**Dan Aaron Polster, District Judge.**  Plaintiff Matthew Streater and his co-workers appeal an order of the district court granting Defendants-Appellees' motion for judgment on the pleadings and denying motions for reconsideration.  For the reasons to follow, we affirm.

**I.**

In January 2005, Assistant Attorney General Courtright authorized the issuance of four felony complaints against Matthew Streater for failure to pay child support to four separate women who bore his children.

On March 16, 2005, Defendant George Harris, a Special Agent in the Child Support Division of the Michigan Attorney General's Office who was investigating Streater's cases, prepared an affidavit in support of a warrant to search Streater's businesses operating from 20419 Grand River,

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Detroit, Michigan. After the affidavit was reviewed and signed by Defendant Michigan Assistant Attorney General Felicia M. Courtright, Harris presented the affidavit to a Magistrate, who reviewed the affidavit and signed the warrant. Harris and Defendant Special Agent Michael Williams then executed the search of Streater's businesses over a six-hour period during which time they ordered Streater's co-workers to leave the premises.

In July 2005, the Circuit Court for Wayne County denied Streater's motion to quash information and his motion to dismiss the complaints, as well as his motions for rehearing both matters. In September 2005, the Circuit Court denied Streater's motion to dismiss the criminal proceedings based on alleged violations of his state and federal constitutional rights.

In October 2005, Streater entered guilty pleas on all four cases pursuant to negotiated plea agreements. The plea agreements required Streater to make lump sum payments of $2,500 on each of the four files by December 16, 2005, and $3,750 on each of the four files by February 3, 2006 – the day he was scheduled to be sentenced. The agreements also required him to make monthly payments of $1,100, to be distributed among the four files. On sentencing day, after making no support payments whatsoever, Streater filed a motion to adjourn his sentence – and spent the next several months filing numerous documents, which had the effect of postponing his sentencing and his support payments.

In April 2006, two of the cases against Streater were dismissed based on a then-recent decision by the Supreme Court of Michigan, *People v. Monaco*, 474 Mich. 48 (2006). The effect of *Monaco* was to preclude prosecution of those cases due to a problem with the charging periods alleged therein. On April 26, 2006, two new warrants with proper charging times were issued and

two new complaints were filed. The new cases were consolidated with the old cases for further proceedings. Streater responded by filing an emergency motion to dismiss the new cases.

In August 2006, Streater entered negotiated plea agreements with the government on the two original cases wherein he pled guilty to attempted felony nonsupport. He was sentenced to 60 months' probation with restitution of $158,901, the amount he owed on all four cases. He agreed to pay $300 per month on each of the four files for arrears payments, along with his current monthly support obligations and four annual lump sum payments of $5,000, to be equally divided among the four files, on or before August 30 of 2006, 2007, 2008 and 2009. The two new cases were adjourned until August 30, 2007, at which time they would be dismissed if Streater complied with his monthly and lump sum payments. Notwithstanding the execution of the plea agreements, Streater continued to challenge the validity of his convictions in the state appellate courts.

On March 16, 2007, Streater and co-workers Shawn Diane Jordan, Thomas P. Paxson, Carl Malone and James E. Myers, along with Mather I. Ben dba Professional Collision and Dealer Auto Glass, filed a *pro se* complaint against Michigan Attorney General Michael Cox, Assistant Attorney Generals Courtright and Norman W. Donker (whose only apparent relationship with the case was his involvement in plea negotiations), and Special Agents Harris and Williams. Plaintiffs alleged that the execution of the search warrants constituted intentional interference with business or "taking," and an unconstitutional invasion of privacy. Streater himself alleged that the filing of new criminal charges after the dismissal of time-barred ones constituted malicious prosecution.[1]

---

[1] Streater also alleged a violation of the federal Fair Debt Collection Practices Act ("FDCPA"). The court dismissed the FDCPA claim because none of Defendants was a "debt collector" under the terms of the statute. Plaintiffs did not appeal this ruling.

3

In February 2008, the district court granted a motion for judgment on the pleadings filed by all Defendants. The court concluded that the claims against Defendants in their official capacities were barred by the Eleventh Amendment, citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-101 and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The court ruled that absolute prosecutorial immunity barred the claims against Defendants Cox, Courtright and Donker, citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976) and *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). The court observed that Plaintiffs were seeking damages against Defendants Harris and Williams in their individual capacities based on the execution of the search warrant. The court found that Plaintiffs' allegation, that they were unlawfully seized because they were forced to leave the office for six hours, implicated the Fourth Amendment. However, the court concluded that they could not establish a Fourth Amendment violation because they were not "seized" in any way. *Streater v. Cox*, No. 07-11163, 2008 WL 564884, at *2 (E.D. Mich. Feb. 28, 2008) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Because no constitutional violation was alleged, the Court concluded that these particular Defendants were entitled to qualified immunity. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194 (2001).)

In March 2008, Streater filed a motion for reconsideration. He argued, among other things, that the search of his premises after the felony non-support charges were filed violated the Fourth Amendment because 750.165 is a strict liability offense and the ability to pay (i.e., the stated reason for seeking the warrant) is irrelevant. The court denied the motion.

On appeal, Streater has abandoned all of his claims challenging the legality of the criminal prosecutions for failure to pay child support. Rather, the appeal focuses on the search of Streater's business premises in March 2005 – three months after the felony charges were filed. Streater argues

4

that Defendants violated the Fourth Amendment when they sought, obtained and executed those search warrants. More specifically, Streater argues that the crime of felony non-support under MCL 750.165 is a strict liability offense, for which the question of ability to pay is irrelevant. Thus, he contends, a "general" search of his businesses to determine whether or not he had the ability to pay his court-ordered support, after the charges were filed, was unnecessary and violates the Fourth Amendment. Additionally, Plaintiffs argue that Defendants' refusal to return their business licenses for four to five months constituted an unlawful seizure, and seek damages for "lost business." Streater seeks damages for a broken lock on his briefcase.

## II.

We review the district court's ruling on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same *de novo* standard employed for a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*. (quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted)).

This court recently explained the pleading requirements that are necessary to survive a Rule 12(c) motion for judgment on the pleadings:

> In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of 'his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . ."

5

*Id*. at 1964-65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. __, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id*. (citing *Twombly*, 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir 2008). Further, where a motion for reconsideration seeks review of a district court's ruling on a motion for judgment on the pleadings, we review that ruling *de novo* rather than for an abuse of discretion. *Cf. Abnet v. Unifab Corp.*, No. 06-2010, 2009 WL 232998, at *3 (6th Cir. Feb. 3, 2009) (citing *Greenwell v. Parsley*, 541 F.3d 401, 403 (6th Cir. 2008) (citation omitted) (applying *de novo* standard of review to a motion for reconsideration seeking review of a summary judgment motion)).

### III.

The district court correctly ruled, citing the relevant cases, that the claims against Defendants Courtright, Harris and Williams in their official capacities were barred by the Eleventh Amendment. The court also correctly ruled that, because Courtright, Harris and Williams are officers of the State of Michigan, they are not deemed "persons" under 42 U.S.C. § 1983; thus, they are not subject to suit in their official capacities. *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989).

The district court is also correct that the claims against Defendant Courtright in her individual capacity are barred by prosecutorial immunity. "Prosecutors generally enjoy absolute immunity for acts taken 'in initiating a prosecution and in presenting the State's case.'" *Vakilian v. Shaw*, No. 07-

6

1576, 2008 WL 4997503, at *7 (6th Cir. Nov. 24, 2008) (quoting *Imbler*, 424 U.S. at 431). We look to "the nature of the function performed, not the identity of the actor who performed it." *Id*. (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Absolute prosecutorial immunity also attaches to "administrative or investigative acts necessary for a prosecutor to initiate or maintain a criminal prosecution." *Id*. (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1446-47 (6th Cir. 1997)). This means that the decision to file a criminal complaint and to seek issuance of an arrest or search warrant are quasi-judicial duties involved in initiating a prosecution; thus, they are protected by prosecutorial immunity. *Id*.

Below, Streater argued that he was unconstitutionally prosecuted by Courtright when she filed two criminal complaints with the proper charging method pursuant to *Monaco*, shortly after the two flawed complaints were dismissed. This allegation falls squarely within the aforementioned conduct protected by prosecutorial immunity. Streater argues that Courtright's conduct in prosecuting him and authorizing the issuance of search warrants for his home and businesses to determine his ability to pay violates the Fourth Amendment because the felony statute is a strict liability offense; thus, he is entitled to § 1983 damages. He cites no relevant case law for this legal conclusion. In any event, prosecuting felons and authorizing the issuance of a search warrant in the context of a criminal investigation is a quasi-judicial task that is protected by prosecutorial immunity. *Tunis*, 113 F.3d at 1446-47.

In response to the argument that Defendants Harris and Williams were protected by qualified immunity, the district court cited the standard enunciated in *Saucier*. Under *Saucier*, which applied when the court below evaluated the motion for judgment on the pleadings, district courts evaluating qualified-immunity motions were required to perform a two-step inquiry to determine whether a

7

defendant was protected by qualified immunity. *Saucier*, 533 U.S. at 201. First, the court was required to determine whether the defendant violated a constitutional right. *Id.* If it so determined, the court was then required to determine whether the right violated was clearly established. *Id.* Although *Saucier* held that the two questions must be decided in this precise order, the Supreme Court recently retreated from that requirement and now allows the lower courts to decide the questions in either order. *Pearson v. Callahan*, – U.S. –, 129 S.Ct. 808, 821, 172 L.Ed.2d 565, – (2009). Because *Pearson* granted lower courts the discretion to determine the order in which to conduct the qualified-immunity analysis, it has no impact on this case. In any event, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Below, Plaintiffs claimed that the six-hour removal from their offices while the search warrant was being executed violated their Fourth Amendment rights. The district court correctly concluded that this did not constitute a Fourth Amendment violation because Plaintiffs were never seized.

Plaintiffs argue that they were put out of business for four to five months because Defendants seized their business licenses without which they could not operate. To the extent Plaintiffs are claiming that the seizure of their business licenses constituted an unlawful seizure in violation of the Fourth Amendment, that claim fails. The seizure of property pursuant to an unchallenged search warrant does not violate the Fourth Amendment. *Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th Cir. 1999). Plaintiffs have not asserted that the search warrant was invalid. Law enforcement officers are entitled to qualified immunity when they execute a search relying on a judicially secured warrant. *Hale v. Kart*, 396 F.3d 721, 724 (6th Cir. 2005). The search warrant in this case specifically allowed

8

the seizure of business licenses. (JA 136.) No plaintiff has identified any statement in the search warrant affidavit he or she believes is false, identified any defendant who misrepresented the truth in applying for the warrant or argued that such misrepresentations were material to a finding of probable cause. *Vakilian*, 335 F.3d at 517.

Rather, Streater argues that there was no legal basis for the search warrant because felony nonsupport is a strict liability offense and the question of ability to pay is irrelevant. This arguments lacks merit.

Attached to Streater's motion for reconsideration Streater filed below, is the transcript of a state court criminal proceeding during which Defendant Harris was examined by Streater's attorney, Gary Sohou. Attorney Sohou asked Harris why he sought a warrant to search Streater's businesses after the felony non-support charges were filed. Harris testified that one of the reasons he sought the search warrant was because the State was considering filing additional charges against Streater under MCL 750.161. At that time, Streater was charged with felony non-support under MCL 750.165. A person is guilty of violating 750.165 if he does not pay court-ordered support to his spouse or children in the amount and at the time stated in the order. Under MCL 750.161, however, a person who, "being of sufficient ability, fails, neglects or refuses to provide" necessary food, shelter, care and clothing for his spouse or children under the age of 17, is guilty of criminal neglect punishable by imprisonment in the county jail for not less than 3 months. Based on the plain language of 750.161, the ability to support one's spouse or children is not only relevant, but an element of the offense.

9

Harris also testified that, even if the additional charges weren't filed, Streater's ability to pay would be taken into consideration when the State was determinining how to resolve the charges then-pending.

Finally, Harris testified that he went to Streater's businesses numerous times after the charges were filed to arrest him, or to ask him to voluntarily surrender. Every time he left Streater's workplace, Streater would call Harris on Harris' cell phone, telling Harris that he would get the money together and turn himself in. It was Harris' experience that self-employed business persons were more adept at hiding income than other parents under support orders. Since Streater was self-employed, evading arrest and ignoring his support obligations, Harris felt the need to preserve and maintain the business records during the pendency of the criminal proceedings.

In short, the record supplies sufficient justification for seeking a warrant to search Streater's businesses. Moreover, Streater has not cited a single case that stands for the proposition that, because MCL 750.165 is a strict liability offense, the State can never obtain a search warrant seeking evidence supporting its prosecution – or that requesting such warrant provides a basis for a § 1983 claim.

Plaintiffs have also failed to state a Fourteenth Amendment claim. Once there is a lawful seizure of property, the continued unlawful retention of that property is analyzed under the Due Process Clause. *Fox*, 176 F.3d at 351-52. Plaintiffs bringing a due process claim must assert that either (1) they were deprived of property as the result of an established state procedure that violates due process, or (2) the defendants deprived them of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Plaintiffs cannot assert that they were deprived of the

10

licenses based on a random unauthorized act or as the result of an established procedure that violates due process because the licenses were seized pursuant to the execution of a valid search warrant. Moreover, Plaintiffs have failed to allege the unavailability of adequate state procedures (e.g., a motion to return property) to secure the return of their licenses. Thus, they have failed to assert a Fourteenth Amendment claim.

To the extent that Plaintiffs are claiming that the holding of their business licenses is an unconstitutional "taking" under the Fifth Amendment, it also fails. The Fifth Amendment does not prohibit the taking of property; it prohibits taking without just compensation. *Hensley v. Columbus*, No. 07-4343, 2009 WL 425973, at *1 (6th Cir. Feb. 23, 2009) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985)). "Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner." *Id*. (citing *Williamson,* 473 U.S. at 194-95 & n. 13)). The district court cannot entertain a "taking" claim until the plaintiff shows it received a final decision from the relevant government entity and it sought compensation through the applicable government procedures. *Id*. There is no assertion that Plaintiffs attempted to use relevant procedures to facilitate the return of their property or that they were denied just compensation. Accordingly, this claim fails.

Streater's claim, that Defendants' conduct in breaking the lock to his briefcase during the search violated his Fourth Amendment rights, also lacks merit. As the Supreme Court has observed, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Because the alleged damage was *de minimis*, it does not form the basis for a constitutional claim.

11

Finally, the district court properly denied Plaintiffs' motions for reconsideration. Pursuant to Rule 7.1(g)(3) of the Local Rules of the United States District Court for the Eastern District of Michigan, a district court will not grant a motion for reconsideration that presents "the same issues ruled upon by the court, either expressly or by implication." *Id*. The movant must demonstrate "a palpable defect" by which the court and the parties have been misled and show that correcting the defect will result in a different disposition of the case. *Id*. In denying Plaintiffs' motions, the district court found that Plaintiffs merely presented the same legal issues upon which the court previously ruled and failed to demonstrate a palpable defect by which the court and the parties were misled. Because Plaintiffs have not presented any support for the argument that the district court improperly denied the motions, this issue also fails. *United States v. Savage*, 99 Fed. Appx. 583, 585 (6th Cir. 2004).

**IV.**

It appears that Matthew Streater has used every means possible to thwart his financial obligations to the mothers of his children. This effort is meritless as well. Streater admits that he owned the businesses that were the subject of the search warrant and he pled guilty to attempted felony nonsupport. His co-workers failed to assert that the purported inability to recover their business licenses violated the Fifth or Fourteenth Amendments. Accordingly, we AFFIRM.