*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JUDY WILLIAMS,

        *Plaintiff-Appellant,*

     *v.*

REDFLEX TRAFFIC SYSTEMS, INC., CITY OF
KNOXVILLE, TENNESSEE, BILL HASLAM as
Mayor of the City of Knoxville, Tennessee,
KNOXVILLE CITY COUNCIL, REDFLEX
TRAFFIC SYSTEMS, INC., d/b/a
WWW.PHOTONOTICE.COM, MICHAEL L.
SULLIVAN, GORDON CATLETT, JOSEPH
BERNARD, and UNKNOWN PERSONS,

        *Defendants-Appellees.*

No. 08-5545

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 06-00400—Thomas W. Phillips, District Judge.

Argued: June 10, 2009

Decided and Filed: October 2, 2009

Before: MARTIN, RYAN, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gerald L. Gulley, Jr., GULLEY OLDHAM, PLLC, Knoxville, Tennessee, for
Appellant. Michael S. Kelley, KENNERLY, MONTGOMERY & FINLEY, P.C.,
Knoxville, Tennessee, Ronald Eugene Mills, CITY OF KNOXVILLE LAW
DEPARTMENT, Knoxville, Tennessee, Charles W. Swanson, SHEPPEARD, SWANSON
& MYNATT, PLC, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Gerald L. Gulley,
Jr., GULLEY OLDHAM, PLLC, Knoxville, Tennessee, David B. Hamilton, NORWOOD
LAW OFFICE, Knoxville, Tennessee, for Appellant. Michael S. Kelley, KENNERLY,
MONTGOMERY & FINLEY, P.C., Knoxville, Tennessee, Ronald E. Mills, CITY OF
KNOXVILLE LAW DEPARTMENT, Knoxville, Tennessee, Charles W. Swanson,
SHEPPEARD, SWANSON & MYNATT, PLC, Knoxville, Tennessee, for Appellees.

     MARTIN, J., delivered the opinion of the court, in which SUTTON, J., joined.
RYAN, J. (p. 7), delivered a separate concurring opinion.

1

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. In 2005, the City of Knoxville entered into a contract with Redflex Traffic Systems, Inc. for cameras to take photographs of cars that run red lights. An ordinance provides that the owner be sent notice of the violation and assessed a $50 "civil penalty." Redflex handles the legwork for issuing tickets. It installs and manages the cameras and its employees review photos to determine if someone ran a red light. If they did, and their license plate is visible, the incriminating photos are sent to the Knoxville Police Department where an officer is to view them and send a citation to the car's registered owner. *Williams v. Redflex Traffic Inc.*, No. 3:06-cv-400, 2008 U.S. Dist. LEXIS 22723, *7 (E.D. Tenn. Mar. 20, 2008).

Plaintiff Judy Williams's car went through an intersection, was photographed by Redflex, and, shortly thereafter, she received a citation. This citation, as prima facie evidence of a violation, gave her three options: pay the $50 fine, complete an affidavit of non-responsibility that she was not the driver (and name the actual driver), or schedule a hearing at Knoxville City Court. The citation stated that if she scheduled a hearing she would be assessed a $67.50 "court processing fee." Williams instead took no action, and later filed this federal suit contending that the procedures Knoxville uses to hear challenges to the imposition of the fines violate the federal and Tennessee Constitutions, as well as Tennessee state-law. The district court dismissed for lack of standing. On appeal, she contends that she has standing in view of the apparent "processing fee," and reasserts her challenges to Knoxville's procedures, along with her supplemental state-law claims.

At oral argument, the parties made a key agreement: that Knoxville would provide Williams with a hearing. Thus, although Williams has standing to challenge the ticket itself because of the improper "fee," the city's agreement to give her a hearing renders her challenges to the hearing's procedures unripe, we AFFIRM the district court's dismissal.

I.

Knoxville, Tennessee enacted the "Automated Enforcement" ordinance, Knoxville Code § 17-210, to permit a traffic control system premised on photographs of cars that run red lights. To make it a reality, in December 2005 Knoxville signed a contract with co-defendant Redflex, which specializes in such photo enforcement programs. The contract designates Redflex an "independent contractor," and the company's employees install and monitor the cameras, identify potential violators, and send photos to the Knoxville Police Department. An officer is supposed to view the snapshot and send a signed citation to the car's registered owner. Redflex keeps more than 50% of the tickets' proceeds.

Williams's car went through an intersection in August 2006, Redflex identified it as having run a red light, and she received a citation—though directly from Redflex, containing only a facsimile of an officer's signature. It stated that she violated the local ordinance, and its instructions gave her three rather unattractive options. First, she could pay a $50 fine by mail or in person. If she chose that option, the citation provided that no record of the violation would be kept or sent to her insurance company or the department of motor vehicles. Second, Williams was given the option of completing an "Affidavit of Non-Responsibility" stating that she was not driving her car when it went through the red light (while naming who was driving). This option also provided boxes for the owner to indicate if they had sold their car or if their car or license plate had been stolen. Third, Williams was given the option of scheduling a hearing at Knoxville City Court. This option further stated that "[t]o schedule a hearing you will be assessed a court processing fee of $67.50." This was apparently some kind of misprint: defendants vigorously contend that no such "processing fee" is in fact imposed for requesting a hearing. But there is no debate that this was printed clearly on the citation.

Williams did not respond to the ticket, and later filed this suit in federal court against, among others, Redflex and the City of Knoxville. Her complaint alleged a variety of state and federal claims, including (but not limited to) violations of her procedural due process rights under the Fourteenth Amendment to the federal constitution, and violations of state

constitutional and statutory law.[1] The defendants moved for summary judgment. The district court— though stating its view that the program was "Orwellian" and "may violate U.S. or Tennessee constitutional" law—granted defendants' motion to dismiss on the ground that Williams lacked standing. *Redflex*, No. 3:06-cv-400, 2008 U.S. Dist. LEXIS 22723. Williams appeals to this Court, focusing her appeal on the standing question and, assuming this Court has jurisdiction, whether the ordinance and red light program violates federal or state law. Finally, at oral argument, the parties made a key agreement: Knoxville would give her a hearing. This is important to our disposition.

## II.

This Court reviews a grant of summary judgment de novo, and must draw all reasonable inferences in Williams's favor. *Crawford v. TRW Auto.*, 560 F.3d 607, 611 (6th Cir. 2009). The district court dismissed Williams's claims for want of standing. To satisfy "the irreducible constitutional minimum of standing" under Article III, a plaintiff must make three showings: (1) an injury in fact—meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged actions—meaning that the injury is fairly traceable to the defendants' conduct; and (3) a likelihood that the injury will be redressed by a favorable decision—meaning that the prospect of obtaining relief from a favorable ruling is not speculative. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[T]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id* at 561. Each standing element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

---

[1]In full, her Complaint alleged: (1) constitutional and statutory violations under 42 U.S.C. §§ 1983 and 1988; (2) violation of the Tennessee Open Records Act; (3) outrageous conduct or intentional infliction of emotional distress; (4) negligence or gross negligence under the Governmental Tort Liability Act; (5) civil conspiracy; (6) vicarious liability; and (7) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5). Most of these are not pressed on appeal.

Williams contends that the procedures Tennessee provides for citation hearings are constitutionally inadequate. Yet she has not yet experienced the procedures she challenges, and so, at first blush, it appears difficult to question the district court's conclusion that Williams lacked standing; without having been injured by these procedures, she resembles a mere outsider with a non-justiciable "general grievance." *See United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient for standing to invoke the federal judicial power."); *Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001) ("Herrada lacks standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing."). But this case is more complicated than that.

Williams is unlike the plaintiffs who simply failed to invoke the procedures they challenged. *Cf. Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 710 (M.D.N.C. 2003); *Van Harken v. City of Chicago*, 906 F. Supp. 1182, 1187 n.5 (N.D. Ill. 1995) (dismissing claims by litigants who "cannot claim the inadequacy of the process that they made no effort to bring into play"). Instead the citation Williams received not only told her that she owed a $50 fine and that she was entitled to a hearing, it appeared to, erroneously, condition her right to a hearing on her up front payment of a $67.50 "court processing fee." In defending this apparent requirement, defendants make much of the fact that it was a mistake and that if Williams had actually requested a hearing, she would not have been charged any fee (at least up front). Appellees' Br. at 26-27. Yet, that alone cannot allay concerns because there is no question that the citation quite clearly stated the fee requirement—which was higher than the fine itself—thus making requesting a hearing apparently a terrible bargain for those who receive tickets. That the citation was inaccurate must be irrelevant: plaintiffs cannot be required to be clairvoyant and may, justifiably, rely on what their notice in fact says.

Indeed, a notice that offers the ticketed the choice between paying a a $50 fine and having to pay $67.50 to challenge it offers no choice at all. Standing requires plaintiffs who bring such claims to have suffered an injury that is fairly traceable to the

violation for which they seek redress. *Lujan*, 504 U.S. at 561. Here, we can fairly say that few rational persons would pay their parking ticket if challenging it was conditioned on paying a non-refundable fee over and above the cost of the ticket, and this is what the ticket she received appeared to require. The fact that she did not pay at all does not change what the ticket offered her; it remained an irrevocably bad bargain. Imagine, for example, if the ticket was for $50 but the fee was $100,000—we would not say there that it was improper not to pay the fee to challenge the procedures. That Williams received an improper processing fee over and above the price of the ticket itself gives her standing enough to get in the courthouse door.

But she gets her no further than that. Because Knoxville has now promised to give her a hearing, her claim, which challenges the specifics of the procedures Knoxville offers for a ticket hearing, is unripe. The ripeness inquiry requires this Court to consider two questions: "(1) [I]s the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? [A]nd, (2) what is the hardship to the parties of withholding court consideration?" *Warshak v. United States*, 532 F.3d 521, 525-26 (6th Cir. 2008) (en banc) (internal citations and quotations omitted). Here, Williams admits that she challenges procedures she has not experienced. As a result, until she gets this first-hand experience—which Knoxville has now promised—her challenge would amount to non-justiciable "litigation by hypothetical." *Warshak*, 532 F.3d at 529. Thus, because Williams did not invoke Tennessee's procedure, any claim regarding their inadequacy is purely speculative and was properly dismissed.

### III.

In sum, although the improper processing fee gave Williams standing to get her foot into the door, her claim is nevertheless unripe because Knoxville has now promised to give her a hearing, and until then she cannot point to any procedures that she experienced and wishes to challenges. Thus, we AFFIRM the dismissal of plaintiff's claims.

————————————

**CONCURRENCE**

————————————

RYAN, Circuit Judge, concurring.  While I agree with my colleagues that the district court's judgment should be affirmed, I do not agree that the plaintiff had standing to bring this federal lawsuit.

In my judgment, the Honorable Thomas W. Phillips of the district court got it precisely right:  Judy Williams had no standing to sue because she failed to show that she personally suffered "an actual or imminent" injury that is both "concrete and particularized" and "not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  She suffered no injury at all, not even the cost of a telephone call to the Knoxville City Court to request a hearing.  Had she made such a call, she would have been given a hearing date and learned that no processing fee would be assessed.

I would affirm the district court's judgment on Judge Phillips's well written opinion.