*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL MCCARTHY; COLLEEN CARROLL,
Individually and on behalf of all others
similarly situated,

>  *Plaintiffs-Appellants,*

*v.*

CITY OF CLEVELAND,

>  *Defendant-Appellee.*

No. 09-4149

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-01298—James S. Gwin, District Judge.

Argued: August 4, 2010

Decided and Filed: November 9, 2010

Before: COLE and McKEAGUE, Circuit Judges; MAYS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Thomas A. Muzilla, THE MUZILLA LAW FIRM, LLC, Cleveland, Ohio, for Appellants. Gary Scott Singletary, CITY OF CLEVELAND, DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee. **ON BRIEF:** Thomas A. Muzilla, THE MUZILLA LAW FIRM, LLC, Cleveland, Ohio, for Appellants. Michael F. Cosgrove, Jennifer Meyer, CITY OF CLEVELAND, DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee.

MAYS, D. J., delivered the opinion of the court, in which COLE, J., joined. McKEAGUE, J. (pp. 11–13), delivered a separate concurring opinion.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

—————————————

**OPINION**

—————————————

SAMUEL H. MAYS, JR., District Judge.   Plaintiffs Daniel McCarthy and Colleen Carroll appeal the judgment of the district court dismissing their action brought under 42 U.S.C. § 1983.  Plaintiffs allege that the City of Cleveland's decision to enforce its traffic camera ordinance against drivers who lease their cars constituted an unconstitutional taking of private property without just compensation because the ordinance originally did not provide for lessee liability.  The district court disagreed and dismissed their suit after concluding that their Amended Complaint failed to state a cause of action under the Takings Clause of either the United States or Ohio Constitution. Because Cleveland's enforcement of its traffic regulations did not result in the seizure of a specific fund of money, we hold that no taking of property occurred under the Fifth Amendment and thus **AFFIRM** the judgment of the district court on the federal question.  We find, however, that the district court did not properly address Plaintiffs' state law claims.  We **REVERSE** and **REMAND** the judgment of the district court on the remaining issues of Ohio law.

**I.**

Plaintiffs are residents of Cuyahoga County, Ohio, which encompasses the city of Cleveland.  On February 23, 2009, McCarthy received a notice from Cleveland's Parking Violations Bureau stating that one of its automatic traffic enforcement cameras had captured him committing a traffic offense.  McCarthy received a second notice stating that he had committed another traffic offense on March 3, 2009.  Carroll received two notices stating that automatic cameras had captured her violating Cleveland's traffic ordinances on March 8 and August 15, 2007.  Both McCarthy and Carroll leased their vehicles.  Thus, they were not the registered owners of their respective automobiles. Plaintiffs chose not to contest the citations and paid the $100 fine on each ticket.

Cleveland Codified Ordinance ("CCO") 413.031 authorizes the Parking Violations Bureau to install automatic enforcement cameras to photograph motorists who run red lights or speed through designated locations. The ordinance, as originally enacted, provided that "[t]he owner of a vehicle shall be liable for the penalty imposed under this section." CCO 413.031(c) (2007). It defined "owner" as "the person or entity identified by the Ohio Bureau of Motor Vehicles . . . as the registered owner of the vehicle." CCO 413.031(p)(3) (2007). Because McCarthy and Carroll leased their vehicles, they were not listed as registered owners on the records of the Ohio Bureau of Motor Vehicles. Under the plain text of Cleveland's ordinance, Plaintiffs were not liable for the tickets. *See* CCO 413.031(p)(3) (2007). The Ohio Court of Appeals accepted this reasoning when Dickson & Campbell, LLC, a law firm that also leased its company vehicles but that is not a party to the present suit, chose to contest the citations it received. *See Dickson & Campbell, LLC v. City of Cleveland*, 908 N.E.2d 964, 970 (Ohio Ct. App. 2009). The Ohio Court of Appeals' ruling effectively immunized lessees from enforcement of Cleveland's automatic traffic camera ordinance. *Id.* Cleveland has since amended its ordinance to correct the omission so that lessees are now liable for their traffic camera violations. *See* CCO 413.031(p)(4) (2010) (providing that the "registered owner of a vehicle, or in the case of a leased or rented vehicle, the 'lessee,'" is liable for the ticket).

Plaintiffs filed suit in the Court of Common Pleas of Cuyahoga County, Ohio, on May 29, 2009, alleging that Cleveland's enforcement of the original traffic camera enforcement ordinance against lessees violated the Takings Clause of the United States and Ohio Constitutions. *See* U.S. Const. amend V; Ohio Const. Art. I, § 19. Plaintiffs also sought mandamus and other equitable relief under Ohio law to force Cleveland to disgorge the wrongly collected fines as just compensation for the alleged takings. Cleveland removed the action to federal court based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441(b). Following briefing, the district court granted Cleveland's Motion to Dismiss. *McCarthy v. City of Cleveland*, No. 1:09-CV-1298, 2009 U.S. Dist. LEXIS 68651, at *3 (N.D. Ohio Aug. 6, 2009). The district court found that Plaintiffs failed to allege that a taking had occurred because Plaintiffs voluntarily paid the fines

without contesting them using the appeal procedure noted on the citations. *Id.* at \*11. Plaintiffs timely filed their notice of appeal.

## II.

Plaintiffs argue that Cleveland's enforcement of the automatic traffic camera ordinance against lessees deprived them of their property without just compensation in violation of the Takings Clause of the Fifth Amendment.[1]  Plaintiffs assert that Cleveland's actions effected a *per se* taking and that their decision to pay the fines without contesting them did not amount to a voluntary payment that would deprive them of their right to challenge Cleveland's action. (Appellants' Br. at 15-19.) They argue that they had "no meaningful choice" but to pay the citations. (*Id.* at 19.)

We review a district court's dismissal of a complaint *de novo.* *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). In so doing, "we accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief." *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).

## A.

The Fifth Amendment provides, in pertinent part, that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *see also Chicago Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897) (holding that the Takings Clause applies to the states). Because Cleveland has not returned Plaintiffs' fines or provided any other compensation, the question before the court is whether Cleveland's actions constitute a taking. *See Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 160 (1980). A taking may assume one of two forms: *per se*, also known as a physical taking, or regulatory. *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville and Davidson County*, 130 F.3d 731, 737 (6th Cir. 1997). A physical

---

[1]Plaintiffs' Amended Complaint also alleged that Cleveland's action violated Article I, § 19 of the Ohio Constitution. The violation of a provision of state law is not cognizable under § 1983. *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010).

taking occurs when "the government physically intrudes upon a plaintiff's property." *Id.* A regulatory taking occurs when a governmental enactment leaves a property owner with "*no* productive or economically beneficial use"of his property, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992) (emphasis in original), or prevents the property owner from enjoying "some – but not all – economic uses." *Harris v. City of St. Clairsville*, 330 F. App'x 68, 76 (6th Cir. 2008). Plaintiffs assert that Cleveland's enforcement of its original traffic camera ordinance is a *per se* taking. (Appellants' Br. at 12.)

The Supreme Court has held that certain statutes can effect a *per se* taking of funds. In *Webb's Fabulous Pharmacies*, 449 U.S. at 163-64, the Court found that a Florida statute allowing county court clerks to keep all interest earned on funds paid into court in interpleader actions effected a taking without just compensation. *See* Fla. Stat. § 28.33 (1977). The seizure of the interest earned was unrelated to any service provided by the Florida court system because a separate statute specified a percentage fee that the court clerk would receive to cover his expenses. *Webb's Fabulous Pharms.*, 449 U.S. at 157 n.3. (citing Fla. Stat. § 28.24 (1977)). The Supreme Court held that the Florida statute allowed the "State, by *ipse dixit*, [to] transform private property into public property without compensation" and invalidated the provision. *Id.* at 164.

More recently, the Supreme Court has held that state programs requiring that the interest earned by lawyers' trust accounts be turned over to the states' legal aid charities effect a *per se* taking of private property. *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 240 (2003). Known as Interest on Lawyers' Trust Accounts ("IOLTA"), these programs, now found in every state, confiscate the interest earned from attorneys' general trust accounts. *Id.* at 220. Those general trust accounts hold client funds that are not large enough to justify establishing separate, client-specific trust accounts. *Id.* at 223-24. Because the interest income generated by funds held in IOLTA accounts is the private property of the funds' owners, the Court found that state IOLTA programs

took private property for the legitimate public use of providing legal aid to the poor. *Id.* at 220, 240.**²**

These two examples, in which the Supreme Court found a *per se* taking of funds, explain why the Cleveland traffic ordinance challenged here does not effect a taking. In each case, the state law at issue operated to seize a sum of money from a specific fund. *See id.* at 223-24 (lawyers' trust accounts); *Webb's Fabulous Pharms.*, 449 U.S. at 163-64 (funds held by the Florida courts in an interpleader account). The statutes found to effect takings did not, as the Cleveland ordinance does, merely impose an obligation on a party to pay money on the happening of a contingency. Cleveland did not seize funds from Plaintiffs' bank accounts. *Cf. Brown*, 538 U.S. at 224-25 (noting that the financial institutions were required by law to pay the interest earned directly to the state). Instead, Plaintiffs, on receiving the traffic citations, paid the money demanded without protest or appeal.

The Supreme Court has no direct, binding holding addressing whether a law must act on a specific fund of money to implicate the Takings Clause. However, in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), five Justices indicated that the Takings Clause is implicated only by laws that "appropriate, transfer, or encumber" an estate in land, intellectual property, or other specific "identified property interest[s]," such as a bank account or accrued interest. *Id.* at 540 (Kennedy, J., concurring in the judgment and dissenting in part); *see also id.* at 554 ("The 'private property' upon which the Clause traditionally has focused is a specific interest in physical or intellectual property." (citations omitted)) (Breyer, J., joined by Stevens, Souter, and Ginsburg, J.J., dissenting). The *Eastern Enterprises* plurality, however, did find that a *regulatory* taking occurred when a federal statute *retroactively* imposed a $100 million liability on a corporation that had ceased operating in the targeted industry more than thirty-years before. *Id.* at 528-29 (plurality opinion). The primary factors cited by the plurality in support of its holding were: 1) the severe financial penalty the act imposed; 2) the disproportionate

---

**²**There was no constitutional violation, however, because the Court determined that the just compensation due, measured by the owners' pecuniary loss, was "zero." *Id.* at 240.

nature of the benefit to be conferred compared with the burden to be applied; and 3) the retroactive nature of the imposition.  *See id.* at 529-37.

Faced with the Court's split opinions in *Eastern Enterprises*, courts of appeal have differed in their analytical approaches.  Some courts have suggested that Justice Kennedy's concurrence, which was necessary for the majority's result, is the narrower opinion and thus binding precedent.  *See Swisher Int'l v. Schafer*, 550 F.3d 1046, 1054 n.5 (11th Cir. 2008); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks and citation omitted)).  Other courts of appeal have concluded that they are bound by the agreement of five Justices that the Takings Clause is inapplicable when a law does not operate on a specific property interest.  *See, e.g.*,  *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed. Cir. 2001) (en banc); *Parella v. Ret. Bd. of R.I. Employees' Ret. Sys.*, 173 F.3d 46, 58 (1st Cir. 1999).  A third group of courts has concluded that neither the plurality nor Justice Kennedy's concurrence is binding and thus engaged in an independent analysis of the legal issues.  *See, e.g.*, *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003).

Regardless of the analysis employed, all circuits that have addressed the issue have uniformly found that a taking does not occur when the statute in question imposes a monetary assessment that does not affect a specific interest in property.  *See Parella*, 173 F.3d at 58; *Alcan Aluminum Corp.*, 315 F.3d at 189-90; *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 659 (3d Cir. 1999); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 606 (4th Cir. 1999); *Swisher Int'l*, 550 F.3d at 1056-57; *Ass'n of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d 1246, 1254-57 (D.C. Cir. 1998); *Commonwealth Edison*, 271 F.3d at 1339.  Those circuit courts that have applied the plurality's takings analysis have done so only where a specific private property interest is *retroactively* affected.  *See, e.g.*, *U.S. Fid. & Guar. Co. v. McKeithen*, 226 F.3d 412, 420 (5th Cir. 2000) (applying the analysis of the *Eastern Enterprises* plurality after finding that the

state law in question operated retroactively on an identifiable, specific property interest); *Central States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 807-10 (7th Cir. 1999) (applying the plurality's analysis where the property retroactively affected was a pension fund); *Quarty v. United States*, 170 F.3d 961, 968-70 (9th Cir. 1999) (applying the plurality's analysis and finding no taking where challenged act was a retroactive increase in the federal gift and estate tax rates applied to a decedent's estate). We agree with these analyses and hold that the Takings Clause "is not an appropriate vehicle to challenge the power of [a legislature] to impose a mere monetary obligation without regard to an identifiable property interest." *Swisher Int'l*, 550 F.3d at 1057. Because the challenged ordinance does not seize or otherwise impair an identifiable fund of money, Plaintiffs have failed to plead a cause of action under the Takings Clause.[3] We therefore **AFFIRM** the district court's dismissal of Plaintiffs' § 1983 claim.

## B.

At oral argument and in their Reply Brief, Plaintiffs attempt to resuscitate their suit by alleging that the original Cleveland traffic camera enforcement ordinance also violated due process. The gravamen of Plaintiffs' Amended Complaint is that Cleveland improperly and arbitrarily interpreted its ordinance to apply to drivers who leased their cars. (Appellants' Br. at 11.) Charges of arbitrary or irrational governmental action generally implicate the Constitution's Due Process Clause. *See White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 853 (6th Cir. 2010). Plaintiffs did not allege a due process violation in their Amended Complaint. (*See* Reply Br. at 16 (acknowledging that Plaintiffs "have not previously raised the issue of . . . due process").) Because it is

---

[3]Even if applied, the analysis undertaken by the *Eastern Enterprises* plurality would be of no help to Plaintiffs. Plaintiffs do not argue that the Cleveland ordinance was a regulatory taking. *Compare* Appellants' Br. at 12-15 (arguing that the taking was *per se*), *with Eastern Enters.*, 524 U.S. at 529 (applying the three-factor test "that traditionally ha[s] informed [the] regulatory takings analysis"). Further, Cleveland's ordinance imposes a $100 fine, not a draconian penalty. *See* CCO 413.031(o) (2007); *cf. Eastern Enters.*, 524 U.S. at 529 (penalty of $50-$100 million). The fine is not disproportionate or retroactive. Its economic impact on Plaintiffs is slight. *Cf. Eastern Enters.*, 524 U.S. at 532-37 (noting the disproportionate nature of the exaction and its severe interference with reasonable investment expectations because of its retroactivity). Thus, even applying the *Eastern Enterprises* analysis, Plaintiffs fail to establish that a taking has occurred.

well settled that "the appellant cannot raise new issues in a reply brief," we will not address their belated due process arguments.  *United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.2 (6th Cir. 2010) (citations omitted).

## C.

Plaintiffs' final argument is that the district court erred by failing to address their state-law claims for restitution and/or mandamus relief.  (Appellants' Br. at 25.) Plaintiffs ask us to remand those claims to the district court so that the district court can rule on them or exercise its discretion and remand them to the Court of Common Pleas of Cuyahoga County, Ohio.  (*Id.*)

Plaintiffs' state-law claims, like their federal claims, are based on the assertion that Cleveland improperly retained lessees' fines and thus took "private property without compensation in violation of Art. I, § 19 of the Ohio Constitution."  (Amended Compl. ¶ 53.)  The district court appears to have assumed that the Takings Clause of the Ohio Constitution is coterminous with that of the Federal Constitution but cites no case interpreting Ohio's constitutional provision.  *See McCarthy*, 2009 U.S. Dist. LEXIS 68651, at *9-11.  The Ohio Supreme Court has held, however, that Article I, § 19 of the Ohio Constitution affords greater protection than the federal Takings Clause.  *See City of Norwood v. Horney*, 853 N.E.2d 1115, 1136-42 (Ohio 2006) (rejecting the holding of the Supreme Court in *Kelo v. City of New London*, 545 U.S. 469, 488-90 (2005) that economic development is a "public purpose" under the federal Takings Clause as inconsistent with the greater protection of property rights afforded by the Ohio Constitution).

The district court did not analyze Count I of Plaintiffs' Amended Complaint, which asserted that Cleveland's enforcement of the traffic camera ordinance unjustly enriched the city.  *See McCarthy*, 2009 U.S. Dist. LEXIS 68651, at *9-11.  We, therefore, must **REVERSE** the judgment of the district court on these state law claims and **REMAND** this case for further proceedings.  On remand the district court may exercise supplemental jurisdiction over these state law claims, *see* 28 U.S.C.

§ 1367(c)(3), or remand them to the Court of Common Pleas of Cuyahoga County, Ohio. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court [to which the case was removed] lacks subject matter jurisdiction, the case shall be remanded.").

## III.

Plaintiffs chose to plead their case as an action under the Takings Clause. The district court correctly dismissed their federal claims. We **AFFIRM** the judgment of the district court on Plaintiffs' federal claims. We **REVERSE** the judgment of the district court on Plaintiffs' state law claims and **REMAND** for further proceedings.

---

**CONCURRENCE**

---

McKEAGUE, Circuit Judge, concurring.  I concur in the majority opinion in all respects.  I write separately merely to highlight a second reason why Plaintiffs' payment of their traffic fines does not constitute a "taking."  In order to demonstrate that the City committed a taking, Plaintiffs must allege and show that payment of their citations was involuntary.  *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992) ("the Takings Clause requires compensation if the government authorizes a *compelled* invasion of property").  As the City clearly issued the citations and Plaintiffs paid the required fines, Plaintiffs must allege facts which, if proven, would support a finding that their payments were made under duress or compulsion.

In *Oberhausen v. Louisville-Jefferson County Metro Government*, 527 F.Supp.2d 713 (W.D. Ky. 2007), the court held in an analogous context that voluntary payments made to satisfy outstanding parking tickets were precisely that:  voluntary payments.  *Id.* at 725. The payments were considered to be "voluntary" because paying the fine was not the only option available to the vehicle owner in responding to notice of the violation.  To avoid the potential consequences associated with nonpayment of the fine, the vehicle owner could either pay the fine or contest the ticket by any of three methods.  *See id.* at 716-17.  The availability of these options, the court held, citing *Herrada v. City of Detroit*, 275 F.3d 553, 559 (6th Cir. 2001), was sufficient to render the plaintiffs' choice to pay the fines voluntary, not the product of an improper deprivation.  *Oberhausen*, 527 F.Supp.2d at 725.  The voluntariness of the payments was thus held to undermine the plaintiffs' allegation that they suffered an unconstitutional "taking."  *Id.*

Here, too, the notice of violation received by Plaintiffs adequately advised them of their options.  As the district court noted, the second page of the citation set out the instructions for answering the notice, providing:  "You must either admit or deny this infraction.  If your admission or denial is not received within 21 calendar days of the notice date of the ticket, late penalties will be added and you will lose your rights to

appeal." *McCarthy*, 2009 U.S. Dist. LEXIS 68651 at *6. The citation informed Plaintiffs of four methods "to admit" the violation, all of which involved paying the fine. The instructions "to deny" permitted them to check a box to indicate whether they desired a hearing, wanted to demonstrate that the vehicle had been stolen, or wanted to demonstrate that the vehicle was not in their custody, care, or control at the time of the infraction. *Id.* at *7.

The citation thus clearly provided an option, permitting either payment or appeal. Plaintiffs had the option of challenging the charged violations without first paying the fines. For whatever reason, they chose to voluntarily pay the fines without challenging the tickets. The City did not garnish, attach, seize or otherwise "take" the fine monies from accounts or funds belonging to plaintiffs. As the citation provided an alternative to payment—an alternative not unreasonable, onerous or coercive—Plaintiffs' payments of the fines were voluntary, not compelled. Indeed, this conclusion is corroborated by the experience of the plaintiffs in *Dickson & Campbell, LLC v. City of Cleveland*, 908 N.E.2d 964 (Ohio Ct. App. 2009)*,* who successfully challenged this very ordinance on the very grounds now asserted *without* paying their fines. That the payments were voluntary is a fact that clearly and fatally undermines Plaintiffs' takings claim.

If Plaintiffs had voluntarily paid under protest and exercised their right to challenge the violations, they arguably would have preserved their right to bring a takings action, but even then, until they received a final denial without just compensation, the action would be unripe. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Yet, even where there is a "taking" of private property by the government, it is not actionable as an unconstitutional taking until after the property owner has first invoked any available process for obtaining compensation and received a final decision from the governmental entity denying the claim. *Id.* at 194-95; *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009). Here, it is undisputed that Plaintiffs could have appealed, but did not. They did not exhaust the process available to them and did not

obtain a final decision on any appeal. It follows that they have not been "denied" just compensation for any improper taking and their federal court action for any unconstitutional taking is therefore premature.

Plaintiffs insist the appeal process provided by the City is not adequate because it could have turned out to be more expensive than simply paying the fine. Citing *Williams v. Redflex Traffic Systems, Inc.*, 582 F.3d 617, 621 (6th Cir. 2009), Plaintiffs argue that such a process "offers no choice at all." In *Williams*, the subject citation gave the recipient the option of either paying a $50 fine or requesting a hearing conditioned on payment of a court processing fee of $67.50—"an irrevocably bad bargain." *Id.* Nonetheless, until the plaintiffs challenged the allegedly unfair process, the court held, they could not establish the requisite concrete factual context and were not subject to the sort of hardship that would render their claim ripe for federal court adjudication. Until the plaintiffs invoked the allegedly unfair procedure, their claim was deemed speculative and non-justiciable. *Id.*

It follows that Plaintiffs in this case, too, are in no position to complain that the City's appeal process is so expensive or onerous as to effectively leave them no choice but to pay the traffic fines. Because they did not invoke the process, their claimed hardship is purely speculative. It follows, per *Williams*, that Plaintiffs' complaint, to the extent it could be liberally construed as alleging that their payment of the fines was involuntary because coerced by an unfair process, is still facially defective for their undisputed failure to have invoked and challenged the allegedly unfair process.

There are thus multiple grounds for affirming the dismissal of Plaintiffs' claim under the Takings Clause of the United States Constitution.