# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

AFT MICHIGAN, HENRY FORD
COMMUNITY COLLEGE ADJUNCT
FACULTY ORGANIZATION, AFL CIO, AFT,
ALPENA MONTMORENCY ALCONA ISD
PARAPROFESSIONALS, ALPENA
MONTMORENCY ALCONA ISD TEACHERS,
ARENAC EASTERN FEDERATION, BAY
ARENAC SKILLS CENTER FEDERATION,
BROWN CITY EMPLOYEES ORGANIZATION,
BROWN CITY FEDERATION OF TEACHERS,
CHEBOYGAN OTSEGO PRESQUE ISLE
SUPPORT PERSONNEL, CHEBOYGAN
OTSEGO PRESQUE ISLE INTERMEDIATE
PARAPROFESSIONALS, CHEASANING
UNION AUXILIARY SERVICE EMPLOYEES,
CLARE GLADWIN ISD FEDERATION,
CRAWFORD AUSABLE BUS DRIVERS
FEDERATION, CRAWFORD AUSABLE
CUSTODIANS SECRETARIAL FEDERATION,
CRAWFORD AUSABLE FEDERATION OF
TEACHERS, CRAWFORD AUSABLE
SUPPORT STAFF FEDERATION,
CRESTWOOD FEDERATION OF TEACHERS,
CTR FEDERATION, DEARBORN
FEDERATION OF SCHOOL EMPLOYEES,
DEARBORN FEDERATION OF TEACHERS,
DETROIT ASSOCIATION OF EDUCATIONAL
OFFICE EMPLOYEES, DETROIT
FEDERATION OF PARAPROFESSIONALS,
DETROIT FEDERATION OF TEACHERS,
EAST DETROIT FEDERATION OF
TEACHERS, ECORSE FEDERATION OF
TEACHERS, FAIRVIEW FEDERATION OF
TEACHERS, FEDERATION OF TEACHERS,
GLEN LAKE FEDERATION OF TEACHERS,
HALE FEDERATION OF TEACHERS,
HAMTRAMCK FEDERATION OF TEACHERS,
HEMLOCK FEDERATION OF TEACHERS,
HENRY FORD COMMUNITY COLLEGE
ADJUNCT FACULTY ORGANIZATION,

FOR PUBLICATION
June 7, 2016

HENRY FORD COMMUNITY COLLEGE FEDERATION OF TEACHERS, HIGHLAND PARK FEDERATION OF PARAPROFESSIONALS, HIGHLAND PARK FEDERATION OF TEACHERS, HURON VALLEY CONTINUING EDUCATION, IMLAY CITY FEDERATION OF TEACHERS, INKSTER FEDERATION OF TEACHERS, IOSCO ISD FEDERATION OF TEACHERS, IOSCO ISD INTERMEDIATE FEDERATION OF AUXILIARY EMPLOYEES, KINGSLEY FEDERATION OF TEACHERS, KIRTLAND COMMUNITY COLLEGE FEDERATION OF TEACHERS, LAMPHERE FEDERATION OF PARAPROFESSIONALS, LAMPHERE FEDERATION OF TEACHERS, LANSING COMMUNITY COLLEGE ADMINISTRATIVE ASSOCIATION, LES CHENEAUX FEDERATION OF SUPPORT STAFF, LES CHENEAUX FEDERATION OF TEACHERS, LAKE CITY SUPPORT STAFF FEDERATION, LAKE CITY TEACHERS AND PARAPROFESSIONALS FEDERATION, LAKE SHORE FEDERATION OF EDUCATIONAL SECRETARIES, LAKE SHORE FEDERATION OF TEACHERS, LAKE SHORE FEDERATION SUPPORT STAFF, MACOMB INTERMEDIATE FEDERATION OF PARAPROFESSIONALS, MACOMB INTERMEDIATE FEDERATION OF TEACHERS, MELVINDALE NAP FEDERATION OF TEACHERS, MELVINDALE NAP PARAPROFESSIONALS, MIDLAND FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF TEACHERS, NORTHVILLE FEDERATION OF PARAPROFESSIONALS, ONWAY FEDERATION OF SCHOOL RELATED PERSONNEL, ONWAY FEDERATION OF TEACHERS, PLYMOUTH CANTON COMMUNITY SCHOOL SECRETARIAL UNIT, PLYMOUTH CANTON FEDERATION OF PLANT ENGINEERS, ROMULUS FEDERATION OF PARAPROFESSIONALS, ROSEVILLE FEDERATION OF TEACHERS, RUDYARD

FEDERATION OF AIDES, RUDYARD
FEDERATION OF TEACHERS, SAGINAW ISD
FEDERATION OF TEACHERS, TAWAS AREA
FEDERATION OF TEACHERS, TAYLOR
FEDERATION OF TEACHERS, UTICA
FEDERATION OF TEACHERS, VAN DYKE
EDUCATIONAL ASSISTANTS FEDERATION,
VAN DYKE PROFESSIONAL PERSONNEL,
WARREN WOODS FEDERATION OF
PARAPROFESSIONALS, WASHTENAW
INTERMEDIATE SCHOOL EMPLOYEES
FEDERATION, WATERFORD ASSOCIATION
OF SUPPORT PERSONNEL, WAYNE COUNTY
COMMUNITY COLLEGE FEDERATION OF
TEACHERS, WAYNE COUNTY COMMUNITY
COLLEGE PROFESSIONAL AND ADMIN
ASSOCIATION, WAYNE COUNTY RESA
SALARIED STAFF, WEXFORD MISSAUKEE
ISD FEDERATION OF TEACHERS,
WHITEFISH TOWNSHIP FEDERATION OF
TEACHERS, CHEBOYGAN OTSEGO
PRESQUE ISLE ISD TEACHERS and
HEMLOCK AUXILIARY SERVICE
EMPLOYEES,

        Plaintiffs-Appellees,

v

STATE OF MICHIGAN,

        Defendant-Appellant.

No. 303702
Court of Claims
LC No. 10-000091-MM

TIMOTHY L. JOHNSON, JANET HESLET,
RICKY A. MACK and DENISE ZIEJA,

        Plaintiffs-Appellees/Cross-
        Appellants,

v

PUBLIC SCHOOL EMPLOYEES RETIREMENT
SYSTEM, PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD, TRUST FOR
PUBLIC EMPLOYEE RETIREMENT HEALTH

No. 303704
Court of Claims
LC No. 10-000047-MM

-3-

CARE and DEPARTMENT OF TECHNOLOGY, MANAGEMENT, AND BUDGET,

        Defendants-Appellants/Cross-
        Appellees,

and

DIRECTOR OF DEPARTMENT OF TECHNOLOGY MANAGEMENT AND BUDGET, DIRECTOR OF RETIREMENT SERVICES OFFICE and STATE TREASURER,

        Defendants.

---

DEBORAH MCMILLAN, THOMAS BRENNER, THERESA DUDLEY, KATHERINE DANIELS and COREY CRAMB,

        Plaintiffs-Appellees/Cross-
        Appellants,

v

PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM, PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM BOARD, TRUST FOR PUBLIC EMPLOYEE RETIREMENT HEALTH CARE and DEPARTMENT OF TECHNOLOGY, MANAGEMENT, AND BUDGET,

        Defendants-Appellants/Cross-
        Appellees,

and

DIRECTOR OF DEPARTMENT OF TECHNOLOGY MANAGEMENT AND BUDGET, DIRECTOR OF RETIREMENT SERVICES OFFICE and STATE TREASURER,

        Defendants.

No.   303706
Court of Claims
LC No.   10-000045-MM

ON REMAND

Before: SHAPIRO, P.J., and SAAD and BECKERING, JJ.

SAAD, J. (*concurring in part and dissenting in part*)

I concur with the majority's conclusion that none of the issues before us has been rendered moot by the Michigan Supreme Court's decision in *AFT Mich v Michigan*, 497 Mich 197; 866 NW2d 782 (2015). However, I respectfully disagree with the majority's view that § 43e of 2010 PA 75 is violative of the Contracts Clauses of the Michigan and United States Constitutions, US Const, art I, § 10 and Const 1963, art 1, § 10, the Takings Clauses of the Fifth Amendment and Const 1963, art 10, § 2, and the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17. Accordingly, just as I dissented from the majority's decision in *AFT Mich v Michigan*, 297 Mich App 597; 825 NW2d 595 (2012), vacated 498 Mich 851 (2015), I again dissent from the majority's decision here that the mandatory contributions at issue are unconstitutional.

## I. NATURE OF THE CASE

In 1974 PA 244, the Michigan Legislature amended the Public School Employees Retirement Act, 1945 PA 136, to provide, on or after January 1, 1975, health care benefits for retired employees of the Michigan public schools. The act provided that the Michigan Public School Employees Retirement System (MPSERS) would pay health care premiums for retired employees and their dependents under any group health plan authorized by the retirement commission. MCL 38.325b(1). In 1980, the Legislature enacted the Public School Employees Retirement Act of 1979, 1980 PA 300, MCL 38.1301 *et seq.*, setting forth the health care coverage provision in MCL 38.1391(1). Pursuant to MCL 38.1341, public schools must contribute to the MPSERS a percentage of the total amount of their payroll to pay the cost of health care premiums for retirees and their dependents. In other words, Michigan taxpayers have, for years, paid for public school employees' retiree health care benefits.

Over the years, the number of retiree participants in the MPSERS program has grown significantly and, therefore, so has the expense to the taxpaying public, which knows little about this unseen, but enormous, cost to the public education system. Indeed, Phillip Stoddard, Director of the Office of Retirement Services of the Michigan Department of Technology, Management, and Budget, estimated that for the year beginning October 1, 2010, the cost of health care for retirees and their dependents would exceed $920,000,000. Thus, it now costs school districts (meaning taxpayers) almost a billion dollars a year for retiree health care alone. Faced with these unsustainable, increasing costs, the Legislature has passed various amendments to increase the copays and deductibles that retirees pay for their health care. These modifications that require retired public school employees to contribute to their health care costs have survived constitutional challenge from education workers. Indeed, our Supreme Court has ruled that the Legislature created and may revoke this taxpayer-funded benefit and that retiree health care benefits are not a constitutionally protected contract right, nor a vested right under the Michigan Constitution.

With the enactment of MCL 38.1343e in 2010 PA 75,[1] the Legislature required current public school employees to not only pay copays and deductibles upon retirement, but also pay dollars directly into the program from which they will reap generous retiree health care benefits. Again, the public school employees object by claiming constitutional infirmities that, in truth, do not exist. I respectfully disagree with the majority's ruling because the challenged legislation is constitutional.

## II. STANDARD OF REVIEW

This Court reviews constitutional issues de novo. *Cummins v Robinson Twp*, 283 Mich App 677, 690; 770 NW2d 421 (2009). This Court also reviews de novo a trial court's decision on a motion for summary disposition. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

## III. IMPAIRMENT OF CONTRACT

The majority's holding that MCL 38.1343e violates the Contracts Clauses is incorrect because, as a matter of law, MCL 38.1343e has not "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co v Spannaus*, 438 US 234, 244; 98 S Ct 2716; 57 L Ed 2d 727 (1978). Indeed, MCL 38.1343e cannot possibly implicate these constitutional provisions because it does not affect, much less impair, any contract. Simply put, to constitute an impairment of contract, there must first be a contract that is impaired. Thus, for plaintiffs to state a claim, MCL 38.1343e must have altered either a contract between the state itself and the public school employees or the public school employees' contracts with some third party. MCL 38.1343e does neither. And, because no contract has been impaired, this claim must fail.

I begin with the established principle that legislative enactments are presumed to be constitutional absent a clear showing to the contrary. *Mich Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 401; 522 NW2d 643 (1994). "The party challenging the constitutionality of legislation bears the burden of proof." *Id*. The majority holds that MCL 38.1343e violates the Contracts Clauses of the United States and Michigan Constitutions.

> This state's constitution, Const 1963, art 1, § 10, provides that "[n]o bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted," which is substantially identical to the federal constitution, US Const, art I, § 10, which provides that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ." Our state constitutional provision is not interpreted more expansively than its federal counterpart. [*Attorney Gen v Mich Pub Serv Comm*, 249 Mich App 424, 434; 642 NW2d 691 (2002).]

---

[1] Of course, 2012 PA 300 later modified MCL 38.1343e, but my citation to MCL 38.1343e in this opinion will refer only to the version presented in 2010 PA 75.

The constitutional prohibition on the impairment of contracts is not absolute and must be accommodated to the state's inherent police power to safeguard the vital interests of the people. *Health Care Ass'n Workers Comp Fund v Bureau of Worker's Compensation Director*, 265 Mich App 236, 240-241; 694 NW2d 761 (2005).

> A three-pronged test is used to analyze Contract Clause issues. The first prong considers whether the state law has operated as a substantial impairment of a contractual relationship. The second prong requires that legislative disruption of contractual expectancies be necessary to the public good. The third prong requires that the means chosen by the Legislature to address the public need be reasonable. In other words, if the impairment of a contract is only minimal, there is no unconstitutional impairment of a contract. However, if the legislative impairment of a contract is severe, then to be upheld it must be affirmatively shown that (1) there is a significant and legitimate public purpose for the regulation and (2) that the means adopted to implement the legislation are reasonably related to the public purpose. [*Id*. at 241 (citations omitted).]

In addition, the inquiry under the first prong regarding whether the state law substantially impairs a contractual relationship "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen Motors Corp v Romein*, 503 US 181, 186; 112 S Ct 1105; 117 L Ed 2d 328 (1992).

First, under the Michigan Supreme Court's ruling in *Studier v Mich Pub Sch Employees' Ret Bd*, 472 Mich 642; 698 NW2d 350 (2005), the public school employees have no contract with the state for retiree health care benefits, nor do the public school employees have vested rights in retiree health care benefits. In *Studier*, the Court held that MCL 38.1391(1) does not create a contract with public school retirees for retiree health care benefits. The plaintiffs, six public school retirees, argued that increases in their prescription drug copayments and deductibles violated US Const, art I, § 10, and Const 1963, art 1, § 10, both of which prohibit a law that impairs an existing contractual obligation. *Studier*, 472 Mich at 647-648. The Supreme Court noted that, in general, "one legislature cannot bind the power of a successive legislature." *Id*. at 660. This principle can be limited where it is in tension with the constitutional prohibitions against the impairment of contracts. *Id*. at 660-661. However, "such surrenders of legislative power are subject to strict limitations that have developed in order to protect the sovereign prerogatives of state governments." *Id*. at 661. Thus, a strong presumption exists that statutes do not create contractual rights. *Id*. Absent a clear indication that the Legislature intended to bind itself contractually, a law is presumed not to create contractual or vested rights. *Id*. To form a contract, the language of a statute must be plain and susceptible of no other reasonable construction than that the Legislature intended to bind itself. *Id*. at 662. Absent an expression of such an intent, "courts should not construe laws declaring a scheme of public regulation as also creating private contracts to which the state is a party." *Id*.

Applying these principles, the *Studier* Court concluded that the plaintiffs had failed to overcome the strong presumption that the Legislature did not intend to surrender its legislative powers by entering into a contractual agreement to provide retiree health care benefits to public school employees. *Id*. at 663. "Nowhere in MCL 38.1391(1), or in the rest of the statute, did the

Legislature provide for a written contract on behalf of the state of Michigan or even use terms typically associated with contractual relationships, such as 'contract,' 'covenant,' or 'vested rights.' " *Id*. at 663-664. Had the Legislature intended to surrender its power to amend the statute to remove or diminish the benefits provided, it would have done so explicitly. *Id*. at 665.

Therefore, *Studier* is directly controlling here, and no contracts entitling plaintiff employees to receive retiree health care benefits exist and, as such, cannot be impaired.

Second, the collective bargaining agreements (CBAs) between the public school employees and various school districts are not even touched, much less impaired. Though the plaintiffs in Docket No. 303704 argue that their breach of contract count is based on CBAs with their local school districts entitling them to compensation at rates established in the agreements, in their complaint, they did not allege that any CBAs existed or that such agreements formed the basis of the breach of contract count, and they did not attach any contracts to their complaint.[2] Further, the state is not a party to the CBAs and cannot be bound by them. *Equal Employment Opportunity Comm v Waffle House, Inc*, 534 US 279, 294; 122 S Ct 754; 151 L Ed 2d 755 (2002); *Baraga Co v State Tax Comm*, 466 Mich 264, 266; 645 NW2d 13 (2002).

In any case, obviously, the CBAs do not address the retiree health care system because this is a benefit created by the state. By virtue of MCL 38.1343e, the state required public school employees to contribute money to help defray the cost of retiree health care benefits. This statutory mandate is between the state and each worker, and this has nothing to do with any contract. Regardless of the wage levels negotiated in CBAs for principals, teachers, or noninstructional workers, those levels are not affected. If, for example, a school district has contracted with a teacher to pay him or her $80,000 a year, the state's mandate that the employee contribute three percent under MCL 38.1343e does not alter the school district's contractual obligation. Indeed, the state Legislature could change the mandate to four percent or one percent, and the school district would nevertheless be required by contract (CBA) to pay the teacher $80,000 a year. MCL 38.1343e simply sets forth a mechanism to ensure that each member of MPSERS makes this contribution by requiring school districts to deduct the contribution from the member's pay and submit it to the retiree health care system. But the particular method is quite apart from the terms of any labor agreement and, indeed, the state could have enforced this mandate by a lump sum or periodic payments made directly by each member. That the state chose a paycheck deduction method simply does not convert a permissible legislatively mandated contribution into an unconstitutional impairment of contract. Clearly, this case concerns the state's demands or financial assessment upon each public school employee, and has nothing to do with any contract between each employee and the state, or a

---

[2] Plaintiffs in Docket No. 303704 note that an employment contract necessarily exists for every employee who performs services in exchange for compensation regardless of whether there was a CBA and, thus, that the failure to plead the existence of CBAs was not fatal to plaintiffs' claims. However, plaintiffs did not merely fail to allege that any CBAs existed, they failed to allege that *any* employment contract for wages was impaired by the operation of MCL 38.1343e.

third party. Accordingly, this constitutional theory to challenge this legislation should be rejected.[3]

## IV. TAKINGS CLAUSES

I also dissent from the majority's holding that MCL 38.1343e effectuates a taking under the United States and Michigan Constitutions. Quite simply, MCL 38.1343e does not effectuate a taking of private property for which the government must give just compensation. Further, no caselaw holds that a "taking" occurs when the Legislature requires a public school employee to contribute money as a condition for receiving benefits in a state-created retirement health care program, which was designed for the benefit of the employee.

US Const, Am V provides that private property shall not "be taken for public use, without just compensation." This prohibition applies against the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc v Beckwith*, 449 US 155, 160; 101 S Ct 446; 66 L Ed 2d 358 (1980); *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 576 n 3; 575 NW2d 531 (1998). Also, Michigan's Constitution provides that "[p]rivate property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. The Takings Clauses do not prohibit the taking of private property; rather, they place a condition on the exercise of that power. *First English Evangelical Lutheran Church of Glendale v Los Angeles Co*, 482 US 304, 314; 107 S Ct 2378; 96 L Ed 2d 250 (1987); *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 261; 792 NW2d 781 (2010). "This basic understanding of the [Fifth] Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English*, 482 US at 315.

Here, plaintiffs do not seek "just compensation" for the "taking of property" arising from an otherwise proper governmental interference. Rather, they alleged that MCL 38.1343e is unconstitutional as applied to them and sought a declaratory ruling to that effect. The trial court granted the requested relief, ordering defendants to "cease and desist from enforcing or implementing MCL 38.1343e and from deducting 3% of members' compensation," in addition to requiring defendants to return, with interest, the contributions already deducted. This declaratory

---

[3] It is not clear to what extent the majority relies in its discussion in Parts II, II, or IV of its opinion on its assertion earlier in Part I that the mandatory deductions were unconstitutional not by virtue of their mandatory nature but because "the contributions were to a system *in which the employee contributors have no vested rights*." Nevertheless, the majority cites to no authority for this novel proposition. If this were true, then many other legislative enactments would be deemed unconstitutional. Though many examples exist, one need look no further than the United States Medicare system, where one must contribute through payroll deductions for health care for when the person eventually attains the age of 65. Thus, under the majority's view, Congress's choice to fund Medicare though payroll deductions would be unconstitutional because a contributing worker may never become vested in any Medicare benefits. But as already noted, I find no support in the law for this proposition.

ruling invalidating the statute was not an award of just compensation for a taking effectuated by an otherwise proper governmental action. Thus, the relief requested and granted in these cases is not that contemplated under the Takings Clauses, and the rulings should be reversed.

The majority's application of the Takings Clauses to plaintiffs' claims is legally unsupportable. Again, requiring a monetary contribution to a retiree health care plan does not trigger the clauses because no constitutionally protected property interest is invaded. The percentage deductions from plaintiff employees' compensation are not physical appropriations of property. Money is fungible and, quite simply, it is artificial to view the deductions as a taking of property requiring just compensation. *United States v Sperry Corp*, 493 US 52, 57-58, 62 n 9; 110 S Ct 387; 107 L Ed 2d 290 (1989). The payroll deductions are merely the Legislature's chosen means to effectuate the employees' obligation under MCL 38.1343e to contribute to their own retirement system in which, under existing law, MCL 38.1391, they will participate upon retirement.

I recognize that, in limited situations, a specific fund of money may be considered property for Takings Clause purposes, *Webb's Fabulous Pharmacies*, 449 US at 156, but no such fund exists here. Further, it is well established that a specific property right or interest must be at stake in order to find a regulatory taking. See *Eastern Enterprises v Apfel*, 524 US 498, 541-542, 544-546; 118 S Ct 2131; 141 L Ed 2d 451 (1998) (Kennedy, J., concurring in the judgment and dissenting in part). Justice Kennedy noted that although the statute at issue in that case imposed a financial burden, it did so without operating on or altering an identified property interest. *Id*. at 540.

> The [statute] does not appropriate, transfer, or encumber an estate in land (*e.g.*, a lien on a particular piece of property), a valuable interest in an intangible (*e.g.*, intellectual property), or even a bank account or accrued interest. The law simply imposes an obligation to perform an act, the payment of benefits. The statute is indifferent as to how the regulated entity elects to comply or the property it uses to do so. [*Id*.]

In *Eastern Enterprises*, Justice Kennedy would have held that the Takings Clause did not apply. *Id*. at 547-550. Furthermore, four other justices agreed with Justice Kennedy that the Takings Clause did not apply because the case involved "not an interest in physical or intellectual property, but an ordinary liability to pay money, and not to the Government, but to third parties." *Id*. at 554 (Breyer, J., dissenting). Justice Breyer noted that in *Webb's Fabulous Pharmacies*, the monetary interest at issue "arose out of the operation of a specific, separately identifiable fund of money. And the government took that interest for itself." *Id*. at 555.[4]

---

[4] And a point the majority avoids is that, on the basis of the analysis expressed by the five justices in *Eastern Enterprises*, lower federal courts have repeatedly held that the imposition of an obligation to pay money does not constitute a taking of private property. See *Adams v United States*, 391 F3d 1212, 1225 (CA Fed, 2004) ("We decline to treat a statutory right to be paid money as a legally-recognized property interest, as we would real property, physical property, or

The majority labors to find a taking by denominating money as property, despite contrary law. The majority reasons that increasing the dollars a retiree must pay is different from requiring current public school workers to contribute money to pay for current retirees who, incidentally, may have been coworkers yesterday and whom current workers may join tomorrow. Regardless, of course, this distinction has no relevance because it is a retiree health care system in which all may share and to which the Legislature has said all must contribute.

Again, MCL 38.1343e states a condition that, after the effective dates of the statute, public school employees must contribute money to a program the Legislature created for those employees upon retirement. Thus, any property interests in the wage levels contained in plaintiffs' respective CBAs were not *retroactively* affected. See *McCarthy v City of Cleveland*, 626 F3d 280, 286 (CA 6, 2010), and cases cited therein. Further, unlike in *Webb's Fabulous Pharmacies* and *Phillips v Washington Legal Foundation*, 524 US 156; 118 S Ct 1925; 141 L Ed 2d 174 (1998), no extraction of interest generated in a specific fund of money has occurred. The essence of plaintiffs' claim is that the state may not take future wages established by their CBAs. Though this is a fallacy because the state demands payment from each worker irrespective of any negotiated wage levels, if there is a remedy, the proper remedy lies in contract, not taking, and a valid taking claim will lie only when the property rights exist independently of the claimants' so-called contracts with the government. *Niagara Mohawk Power Corp v United States*, 98 Fed Cl 313, 315 (2011); see also *Peick v Pension Benefit Guaranty Corp*, 724 F2d 1247, 1276 (CA 7, 1983); *Klamath Irrigation Dist v United States*, 67 Fed Cl 504, 534 (2005), mod on other grounds 68 Fed Cl 119 (2005). Importantly, however, the fact that a contract theory may not yield a recovery or provide a full remedy in a given case " 'does not give life to a takings theory.' " *Niagara Mohawk*, 98 Fed Cl at 316, quoting *Home Savings of America, FSB v United States*, 51 Fed Cl 487, 495-496 (2002). In other words, that a Contracts Clause claim provides no relief does not resurrect an equally spurious taking claim.

## V. SUBSTANTIVE DUE PROCESS

I also dissent from the majority's holding that the plaintiffs in Docket No. 303702 established that MCL 38.1343e is unconstitutional under the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, §17. Because the Takings and Contracts Clauses provide explicit textual sources of constitutional protection regarding the type of governmental conduct at issue (but provide no relief for the reasons already stated), plaintiffs are precluded

intellectual property."); *Commonwealth Edison Co v United States*, 271 F3d 1327, 1340 (CA Fed, 2001) ("[W]hile a taking may occur when a specific fund of money is involved, the mere imposition of an obligation to pay money, as here, does not give rise to a claim under the Takings Clause of the Fifth Amendment."); *Parella v Ret Bd of Rhode Island Employees' Ret Sys*, 173 F3d 46, 50 (CA 1, 1999). In *McCarthy v City of Cleveland*, 626 F3d 280, 286 (CA 6, 2010), the court held "that the Takings Clause 'is not an appropriate vehicle to challenge the power of [a legislature] to impose a mere monetary obligation without regard to an identifiable property interest,' " quoting *Swisher Int'l, Inc v Schafer*, 550 F3d 1046, 1057 (CA 11, 2008). The *McCarthy* court noted that although some lower federal courts have followed the *Eastern Enterprises* plurality's taking analysis, those courts "have done so only where a specific private property interest is *retroactively* affected." *McCarthy*, 626 F3d at 285-286.

from asserting generalized substantive due process claims. That the majority holds otherwise is clearly contrary to our constitutional jurisprudence. *Sacramento Co v Lewis*, 523 US 833, 842; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). The clause should not be invoked "to do the work" of other constitutional provisions, even when they offer a plaintiff no relief. *Stop the Beach Renourishment, Inc v Fla Dep't of Environmental Protection*, 560 US 702, 720-721; 130 S Ct 2592; 177 L Ed 2d 184, 200 (2010) (plurality opinion by Scalia, J.). The plaintiffs in Docket Nos. 303704 and 303706 expressly alleged contract and taking claims. The complaint in Docket No. 303702 alleges only a substantive due process claim, but the label placed on a claim is not dispositive. *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Instead, the gravamen of an action is determined by reading the complaint as a whole. *Id.* Because the underlying allegations are that MCL 38.1343e operates to extract a percentage of plaintiff employees' compensation, the claims fall within the explicit sources of protection provided by the Takings or Contracts Clauses. Resort to the generalized notion of substantive due process is thus improper. *Cummins*, 283 Mich App at 704, citing *Lewis*, 523 US at 842.

Furthermore, a proper review under the applicable standards reveals that plaintiffs' claims are without merit. Both the Michigan and United States Constitutions prohibit the state from depriving any person of life, liberty, or property without due process of law. Specifically, the Michigan Constitution provides the following:

> No person shall be . . . deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed. [Const 1963, art 1, § 17.]

As our Supreme Court has noted, "the term 'due process' encompasses not only procedural protections, but also contains a 'substantive' component that protects individuals against 'the arbitrary exercise of governmental power.' " *AFT Mich*, 497 Mich at 245, quoting *Bonner v City of Brighton*, 495 Mich 209, 223-224; 848 NW2d 380 (2014). When a law is challenged on substantive due process grounds and the law does not infringe on any "fundamental rights," i.e., "the substantive liberties that are deemed 'implicit in the concept of ordered liberty," our review is that of rational basis. *AFT Mich*, 497 Mich at 245; see also *Conlin v Scio Twp*, 262 Mich App 379, 390; 686 NW2d 379 (2004). In other words, the plaintiff has to "prove that the challenged law is not 'reasonably related to a legitimate governmental interest.' " *AFT Mich*, 497 Mich at 245, quoting *Bonner*, 495 Mich at 227.

> As illustrated by our Supreme Court, this is a very high burden:

> "Rational basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some inequity when put into practice." *Crego v Coleman*, 463 Mich 248, 260; 615 NW2d 218 (2000). Rather, it tests only whether the legislation is reasonably related to a legitimate governmental purpose. The legislation will pass "constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Id.* at 259-260. To prevail under this standard, a party challenging a statute must overcome the presumption that

the statute is constitutional. *Thoman v City of Lansing*, 315 Mich 566, 576; 24 NW2d 213 (1946)[, overruled on other grounds *E Grand Rapids Sch Dist v Kent Co Tax Allocation Bd*, 415 Mich 381; 330 NW2d 7 (1982)]. Thus, to have the legislation stricken, the challenger would have to show that the legislation is based "solely on reasons totally unrelated to the pursuit of the State's goals," *Clements v Fashing*, 457 US 957, 963; 102 S Ct 2836; 73 L Ed 2d 508 (1982), or, in other words, the challenger must "negative every conceivable basis which might support" the legislation. *Lehnhausen v Lake Shore Auto Parts Co*, 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973). [*TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 557-558; 629 NW2d 402 (2001).]

The majority remarkably asserts that MCL 38.1343e is "unreasonable, arbitrary, and capricious," and thereby not rationally related to a legitimate governmental interest.[5] Yet, our Supreme Court clearly articulated a rational basis for MCL 38.1343e when it upheld the constitutionality of 2012 PA 300:

> The state's purpose advanced by the challenged portions of 2012 PA 300—implementing a fiscally responsible system by which to fund public school employees' retiree healthcare—is unquestionably legitimate. It is entirely proper for the state to seek the continuation of an important retirement benefit for its public school employees while simultaneously balancing and limiting a strained public budget. The means used by the state—the retiree healthcare modifications made by 2012 PA 300—are also reasonably related to this purpose. It is altogether reasonable for the state to choose to maintain retiree healthcare benefits for all of its current public school retirees, and it is equally reasonable for the state to choose to maintain this program for current public school employees. Moreover, because the Legislature has deemed it fiscally untenable for the state to place the entire burden of providing these benefits on the taxpayers, it is also reasonable that the state would choose to have current public school employees assist in contributing to the costs of this program. If the state requires additional financial support to maintain the public school retiree healthcare system, which class of persons is more appropriate to assist in maintaining the fiscal integrity of this program than the participants themselves? We do not believe that the state or federal Constitutions require Michigan taxpayers to fund the entire cost of a retirement benefit for a discrete group of public employees. The state is not

---

[5] The majority also seems to shift the burden onto defendants when it states that "[d]efendants posit no evidence or even argument to suggest that the funding of these retirement benefits could not have been satisfied by measures that do not raise due process concerns," but this misconstrues where the burden lies. Under rational-basis review, the burden is on the party challenging the law. See *Shepherd Montessori Ctr Milan v Ann Arbor Twp*, 486 Mich 311, 319; 783 NW2d 695 (2010); *People v Idziak*, 484 Mich 549, 570; 773 NW2d 616 (2009); *TIG Ins Co*, 464 Mich at 557-558.

-13-

generally constrained from modifying its own employee benefits programs to accommodate its fiscal needs. [*AFT Mich*, 497 Mich at 248.]

Notably, from the Supreme Court's rationale, the voluntary or mandatory nature of the contributions is not relevant. Whether analyzed under 2012 PA 300 or 2010 PA 75, the state has an "unquestionably legitimate" interest in "implementing a fiscally responsible system by which to fund public school employees' retiree healthcare." *Id.* Further, under 2010 PA 75, every public school employee contributed to the system because every public school employee had the potential to obtain retiree healthcare benefits. Accordingly, it is entirely "reasonable that the state would choose to have current public school employees assist in contributing to the costs of the program." *Id.* Certainly, mandatory contributions to the retiree healthcare system are a "fiscally responsible system by which to fund public school employees' retiree healthcare." *Id.* Again, the fact that there may have been better or less intrusive ways to accomplish this does not somehow transform the law into an unconstitutional deprivation of substantive due process. See *TIG Ins Co*, 464 Mich at 557; *Crego*, 463 Mich at 260.

Accordingly, I would reverse the trial court's grant of summary disposition to plaintiffs on the substantive due process claims.

## VI. CONCLUSION

To discharge their solemn duty under the Constitution, courts must invalidate clearly unconstitutional legislation but must also defer to the Legislature when the public policy is one that may offend the litigants, but not the Constitution. Here, because (1) the challenged public policy does not even touch upon, much less impair, contracts, (2) no property is taken by the state in the sense contemplated by the Fifth Amendment, and (3) the Legislature has a rational basis for enacting 2010 PA 75, it would have been prudent and in keeping with our Court's limited charge under the Constitution to uphold this legislation as constitutional.[6]

/s/ Henry William Saad

---

[6] Additionally, assuming MCL 38.1343e is unconstitutional, I would not summarily order the specific remedy of returning the retained funds as the majority does, especially when the parties themselves have not briefed this particular issue. Instead, I would remand to allow the trial court to determine the proper measure of damages in light of the retiree health care components and the nature of the specific constitutional infirmity.

-14-